274 So.2d 396 (1973)
Edna JACKSON, wife of and James GREEN
v.
JEFFERSON TRUCK SERVICE, INC.
No. 5203.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1973.
*397 Thomas M. Willmott, Metairie, for plaintiff-appellant.
Samuel S. Dalton, New Orleans, Ronald P. Herman, for defendant-appellee.
Before REDMANN, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Mr. and Mrs. James Green sued to recover their damages resulting from an automobile accident in which the car Mrs. Green was driving was struck from the rear by defendant's dump truck. The trial court rendered judgment in favor of the Greens, who appealed, contending that the trial court erred in awarding inadequate general damages and in denying an expert fee to the attending physician who testified at trial.

MOTION TO DISMISS
The appeal bond, though timely filed, was not signed on the signature line by either the principals or the surety. However, both principals and the person named as surety in the bond executed affidavits on the reverse side of the printed form. The affidavit executed by the surety is copied below:

Defendant contends that an unsigned bond is no bond at all, and since no effective bond was timely filed, the judgment of the district court is now final and definitive and no appeal lies therefrom.
This court in B & R Construction Co. v. Duvigneaud, 168 So.2d 468 (La.App. 4th Cir. 1964) held:
"It appears that although the surety did not sign the bond itself she did sign the affidavit attached thereto as required by LSA-C.C.P. Art. 5122. In similar cases it has been held that the omission to sign the bond is a mere irregularity and that the appeal can not be dismissed at least in the absence of a rule brought by appellee in the Trial Court to test the sufficiency or validity of the bond. Iowa Cord Tire Co. v. Cheape et al., 162 La. 935, 111 So. 333; Smith v. Phillips, 168 La. 406, 122 So. 126;"[1]
*398 In the present case we conclude that the bond with an "AFFIDAVIT OF SURETY" on the reverse side signed by the person named as surety in the bond constitutes an appeal bond, even though it may be a defective one. Appellee did not file a motion in the trial court to decree the bond insufficient or invalid. If he had and the trial court had held the bond insufficient or invalid, the appeal could not have been immediately dismissed, but rather the appellant would have had an opportunity to correct the defect within the delay provided by C.C.P. art. 5124. Accordingly, the appeal is not now subject to immediate dismissal upon motion filed in this court, and the motion to dismiss is denied.

MERITS
The severe impact of the February 7, 1970 collision caused Mrs. Green dizziness and immediate pain in the neck and lower back. After the pain worsened the next day (a Sunday), she consulted on Monday a doctor engaged in general practice. His examination revealed cervical spasm, neck tenderness and limited range of neck motion. He diagnosed a moderately severe cervical sprain and restricted her from her job as a domestic worker. He administered diathermy treatments three times per week and muscle relaxants, analgesics and tranquilizers. After three weeks on this regime, Mrs. Green was allowed to return to her work, but her employer testified that she performed only light duty and that it was some time before she could mop, wax, lift heavy objects or bend over because of trouble with her neck and back.
Mrs. Green continued on the therapy and medication until April 24, 1970, when the doctor discharged her with instructions to return if she had further trouble. On July 1, 1970 she returned, complaining of headaches and neck pain. The doctor found muscle spasm in the neck, and being also concerned about her apprehension and emotional condition, he again administered diathermy and prescribed heat and medications. On her final visit one week later he found her much improved. He considered the recurrence of pain as an exacerbation of the original injury.
At the time of trial Mrs. Green was occasionally taking the tranquilizers prescribed by the doctor.
The trial judge awarded general damages in the amount of $750.00, as well as medical expenses, loss of wages and collision insurance deductible in stipulated amounts. He expressed his concern over a medical bill in the amount of $330.00 for this type of injury. Feeling this was a case of overtreatment, he stated that he was not impressed with the length of time she was under treatment or amount of treatments.
Under these circumstances we conclude that an award of $750.00 to a female domestic worker who sustained a moderately severe cervical sprain; returned to limited duty three weeks after the accident; was discharged by the treating physician *399 six weeks after the accident; suffered an exacerbation five months after the accident which substantially cleared in one week; and was asymptomatic thereafter, if a low award, was within the range of discretion vested in the trial judge. C. C. art. 1934(3).
However, the trial judge erred in denying an expert fee to the medical officer on the basis that he was the attending physician and could not give impartial expert testimony. R.S. 13:3666, subd. A provides:
"A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required."
Use of the word "only" is perhaps confusing. However, we interpret this to mean that a doctor, for example, who witnesses an automobile accident and does not professionally examine or treat the party is not entitled to an expert fee for his testimony as to the accident facts simply because he is a doctor.
The attending physician in this case stated the history related to him, the findings of his several examinations and his opinion, diagnosis and prognosis based on the history and the examinations. It is not necessary that an expert answer hypothetical questions in order to be entitled to an expert fee, nor does the fact that the expert is also the attending physician deprive him of entitlement to a fee. The statute simply requires that the expert witness testify to an opinion founded on experience in a branch of science. Inasmuch as this doctor was called to testify only to his opinion based on medical experience and to matters related to that opinion, he is entitled to an expert fee. We set the fee at $100.00.

DECREE
The judgment of the trial court is amended to award an expert fee to the testifying physician in the amount of $100.00, to be taxed as costs. As amended, the judgment is affirmed. Defendant is cast for all costs of this appeal.
Amended and affirmed.
NOTES
[1] In the Iowa Cord Tire case the Supreme Court held:

"S. M. Cook is named as surety in the appeal bond, and, although the bond is not signed by him as surety, yet there is an affidavit made by Mr. Cook and annexed to the bond, in which it is declared that he is surety thereon, and `that he is worth over, and above all his debts and obligations, in assets that can be subjected to levy under execution, the amount for which he has bound himself on said bond.'
"This is a sufficient acknowledgment that S. M. Cook is surety on the bond, although he did not actually sign same; the omission being, manifestly, a mere oversight."
Citing the Iowa Cord Tire case, the Supreme Court in Smith v. Phillips explained:
"It can hardly be doubted that the signers of the affidavit, being named in the bond as the sureties, intended that their signatures should apply to the bond, as well as to the affidavit. It is therefore a matter of no importance that the signatures of the sureties on the bond are not in a more appropriate place."
That court further observed that even it the defect was originally serious, Act No. 112 of 1916 prohibited the dismissal of any appeal on account of an error, inaccuracy or omission in the bond unless the appellant failed to correct the error, inaccuracy or omission within the delay provided after the appellee filed a motion in the court of the original jurisdiction to dismiss the appeal. The court stated:
"No such motion was filed or opportunity given, in this case. We would have no authority, therefore, to dismiss this appeal, even if we believed that the sureties named in the bond were not bound as sureties by their signatures under their affidavit."