MORIAL, Judge.
On June 24, 1965, plaintiff-seller, Southern Pacific Transportation Company (SPTC) formerly Southern Pacific Company and defendant-purchaser, Port-O-Call, Inc. (POC), executed a document labeled “Agreement” for the sale of two certain parcels of immovable property situated in the City of New Orleans. The “Agreement” which the parties refer to in their briefs as a “sell-purchase” agreement recited the sale price at $4.72 per square foot as determined by a licensed surveyor or approximately $432,000.00 “ * * * payable as follows: Twenty One Thousand and 00/100 ($21,000.00) cash, which purchaser has deposited with Railroad [SPTC] as part payment of the purchase price and not as earnest money, receipt of which is hereby acknowledged and the balance of approximately Four Hundred *757 Eleven Thousand and 00/100 ($411,000.00) cash to be paid at the signing of the act of sale.” [1]
Correspondence between the parties in December of 1965 refers to an extension of the agreement for six months. Nevertheless, it is apparent, and, we construe their correspondence to pertain to an Article 9 (suitability) extension of time.
After a six month Article 9 (suitability) extension granted by SPTC expired on June 24, 1966, but within the two year period granted SPTC to work out an exchange arrangement (Article 10), SPTC wrote POC’s counsel on September 16, 1966.
“ * * * Will you please promptly advise if Port-O-Call desires to conclude the purchase of this property so that we can place machinery in operation to sell the property or exchange same as provided in the contract. * * *”
Thereafter neither party took any action until counsel for POC wrote SPTC on May 20, 1971, requesting it to send him for approval the warranty deed provided for in the agreement and stating that the balance of the purchase price will be paid at the signing of the act of sale. The following day POC caused the agreement to be registered in the Conveyance Office for the Parish of Orleans.
SPTC filed suit on June 11, 1973 for a declaratory judgment to have the agreement declared expired and the inscription of the agreement erased and cancelled. POC answered and reconvened seeking to have the agreement declared enforceable and to have SPTC ordered to tender title by presentation of the warranty deed. Each party filed a motion for summary *758 judgment. SPTC’s motion was dismissed. The district court granted POC’s motion and rendered judgment ordering SPTC to tender title by presentation of a warranty deed within fifteen days from the date the judgment became executory. SPTC appeals suspensively. We affirm.
SPTC argues: (1) POC has forfeited its $21,000.00 deposit; (2) the cash payment provision of the agreement granted POC an option to purchase which set forth no definite time was a nudum pactum and void ab initio, but severable from the remainder of the agreement; (3) the contract has expired and, therefore, the Register of Conveyances for the Parish of Orleans should be ordered to cancel and erase the inscription of the agreement.
The . $21,000.00 deposited by POC was deposited on account of the purchase price. Money, deposited on account of the purchase price under a “contract of sale” or “promise of sale,” though intended at the time of consummation of the agreement by the passage of an act of sale to be applied on the purchase price, is earnest money. LSA-R.C.C. Article 2463; Livingston v. Southport Mill, 173 La. 120, 136 So. 289 (1931); Noto v. Blasco, 198 So. 429 (La.App. 1 Cir. 1940). However, we find no manifestation of a desire to recede from the promise to purchase or evidence of default by POC. To the contrary, POC requested a tender of the warranty deed and expressed a willingness to perform.
Article 9 contains no provision for default or forfeiture. It provides for a refund of the deposit if SPTC is notified of unsuitability within six months (extended an additional six months) from date of agreement. It provides for no ipso facto default and forfeiture of the deposit upon a failure to notify, but provides for a “refund of Purchaser’s [POC] deposit” and cancellation upon notification.
The two year period allowed to effect an Article 10 exchange of property provides also for a refund of the deposit. Apparently, the intention of the parties was not for POC’s deposit to be forfeited at the expiration of the initial Article 9 suitability period or any extensions thereof that did not exceed the two year Article 10 exchange provision. This interpretation is further supported by Article 10 which also provides for the deposit to be credited to the purchase price after the expiration of the Article 10 exchange period upon SPTC’s delivery of a warranty deed. Accordingly, under our interpretation, with or without notice, when the Article 9 extension expired with a year remaining for SPTC to effect an Article 10 exchange, POC did not then forfeit its deposit nor did it do so upon the expiration of that year.
Plaintiff’s second argument is without merit. We do not find an absence of mutuality or failure of,consideration in the cash payment provision of Article 10 to warrant it being called a nudum pactum. Likewise, do we fail to find the absence of a stipulated time for SPTC to exercise its ■ option to select property for (Article 10) exchange, or to deliver a warranty deed. The time for delivery was in the exclusive control of SPTC. LSA-R.C.C. Articles 2024, 2035, 2037 and 2462; See Brown, The Potestative Condition in Louisiana, 6 T.L.R. 23; Palmer and Plauche, A Review of the Louisiana Law on Potestative Conditions, 47 T.L.R. 284. Upon the expiration of the Article 10 exchange period, it became incumbent on SPTC to deliver a general warranty deed to POC.
When SPTC wrote POC on September 16, 1966, approximately nine months .remained for SPTC to select property for exchange under Article 10. Why did SPTC not tender or deliver a warranty deed at that time if it was its intention to abandon its option to exchange property? At the expiration of the two year (Article 10) period SPTC did nothing. Under the terms of the agreement SPTC could not *759 refrain from ever tendering or delivering a warranty deed and thereby void the execu-tory contract to sell and retain the deposit as forfeited. Delivery of the warranty deed would have effectively designated a time for POC’s performance and a consummation of the agreement. SPTC’s inaction after the expiration of time for an Article 10 exchange open-ended the agreement. Under the circumstances and terms of the agreement POC’s May 20, 1971 request was not untimely. Further, in Article 13 only does the agreement provide for forfeiture of the deposit as liquidated damages. This forfeiture is conditioned upon a presentation of a warranty deed to POC and its failure to consummate the agreement for any reason within 30 days from presentation.
For the foregoing reasons the judgment of the district court is affirmed. Plaintiff to pay all costs.
Affirmed.
BEER, J., dissents with written reasons.

. Other pertinent articles of the unnumbered agreement which we have numbered for reference provide:
sji * * sfc *
“[9] In the event a competent engineer determines that the property herein described is unsuitable for construction of buildings contemplated by Purchaser, either from foundation test conditions or other construction factors, or in the event that Purchaser finds that the requirements of the title restrictions or the Zoning Ordinance are unsatisfactory to it and cannot, by the exercise of reasonable diligence be changed, and Purchaser so notifies Railroad in writing within six (6) months from date of this agreement and restores the premises to their present condition, Railroad will refund Purchaser’s deposit and this contract shall be of no further force or effect. “[10] Railroad reserves the right to work out an exchange arrangement in lieu of the aforesaid cash payment, wherein Purchaser will acquire other property to be selected by Railroad of equal or approximately equal cost and will exchange such other property to Railroad in return for the herein described property, with difference in cost, if any, to be paid in cash by one party to the other as the case may be, and Railroad to refund to Purchaser the deposit herein receipted for, provided such exchange arrangement may be made within two (2) years from the date of this agreement. Purchaser agrees to exercise good faith in an'attempt to work out such exchange arrangement if requested by Railroad but in the event such exchange arrangement cannot be carried out for any reason within two (2) years from the date hereof, Railroad hereby agrees to deliver said warranty deed to Purchaser upon the payment in cash of the said sum of approximately Four Hundred Thirty Two Thousand and 00/100 Dollars ($432,000.00) less the deposit herein receipted for. The cost of the property exchanged by Purchaser shall include all cost of acquiring and ex-changng said property and the conveyance from Purchaser to Railroad shall be by Special Warranty on the part of Purchaser.
* * * * *
“[13] Should the Purchaser fail to consummate this contract within thirty days from the date warranty deed is presented to Purchaser for signature (which shall be considered tender of title), for any reason whatsoever, Railroad shall have the right (i) to retain the said deposit as liquidated damages for breach of this contract and all improvements placed on said premises by Purchaser shall become the property of Railroad, and this contract shall terminate, or (ii) Railroad may enforce specific performance of this contract at its option.”