342 So.2d 238 (1977)
Mrs. Josephine S. SPEIRER
v.
Kenneth N. McINTOSH.
No. 7641.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
Rehearing Denied February 15, 1977.
*239 Richard K. Simoneaux, New Orleans, for plaintiff-appellee.
Montgomery, Barnett, Brown & Read, Wood Brown, III, Charles A. Boggs, New Orleans, for defendant-appellant.
Before REDMANN, GULOTTA and BOUTALL, JJ.
GULOTTA, Judge.
This suit arises from a landlord-tenant dispute. Defendant-lessee appeals from a judgment in favor of plaintiff-lessor for damages to the premises above and beyond normal wear and tear. Lessor has not answered the appeal.
Before reaching the merits, we are confronted initially with the question whether a timely appeal bond has been filed. Plaintiff contends that the $1,000.00 "Bond for Appeal" filed by defendant is in fact no bond at all. No surety is named or mentioned in the text of the document; only the principal-defendant is bound by its language. The instrument is signed by defendant's counsel for Kenneth N. McIntosh, Jr. It also bears the signatures of two witnesses and of a third party, M. J. Hartson, III. Attached to the instrument, however, is a "Power of Attorney" in which Employers Commercial Union Insurance Company appoints M. J. Hartson, Jr., John E. Lawson and Maurice Hartson, III, as attorneys-in-fact empowered "to make, execute, seal and deliver for and on its behalf as surety any and all bonds or undertakings. . ." The document further provides that ". . . the execution of such bonds or undertakings in pursuance of these presents, shall be binding upon said Company. . . ."
Although the "bond" does not indicate that Hartson signed as surety, the instrument bears the signatures of both the principal and Hartson. Moreover, the attached Power of Attorney discloses Hartson's status as an agent of Employers Commercial, empowered to sign bonds as surety. When the two documents are read together, it is apparent that Employers Commercial binds itself as surety to the defendant's principal obligation.
Accordingly, we hold that the document furnished is in fact an appeal bond, and defendant's appeal will not be dismissed. If any defects exist, those may be cured in the trial court. See LSA-C.C.P. arts. 2088, 5123, 5124 and 5125. See also Super Construction Co., Inc. v. New Orleans Levee Board, 286 So.2d 134 (La.App.4th Cir. 1973), writ refused, 288 So.2d 643 (La.1974); Phillips v. West, 139 So.2d 274 (La.App.1st Cir. 1962); Green v. Jefferson Truck Service, Inc., 274 So.2d 396 (La.App.4th Cir. 1973).

MERITS
The parties entered into a commercial property lease beginning on September 1, 1968, and ending on August 31, 1970. This lease provided, in pertinent part:
"The within leased premises and appurtenances. . . and all other fixtures, are accepted by the Lessee in their present condition . . . . The Lessee agrees to keep them in the same order as received, during the term of this lease . . . and at the termination or cancellation of this lease to return the premises broom clean and free from trash, and in like good order as received . . ., the usual decay, wear and tear excepted."
The contract also provided for stipulated damages for late return of the premises at the termination of the lease and for 10% attorney's fee on any claim by the lessor against the lessee arising from the lease.
Plaintiff-lessor brought suit against defendant-lessee for certain damages to the premises and for lessee's failure to vacate the building at the termination of the lease. The trial judge awarded judgment in favor of the plaintiff against the defendant as follows:
1. $165.00, stipulated damages pursuant to the lease provisions for defendant's four-day overstay in the building beyond the termination date;
2. $5.00, money expended by plaintiff to remove an airconditioning water tower allegedly left behind by defendant;
*240 3. $10.50, expense of removing connections to the water tower;
4. $61.00, cost of replacing a broken toilet;
5. $130.00, cost of replacing a water heater;
6. $30.00, expense of repairing a lavatory;
7. $160.67, cost of replacing a broken glass.
In addition, 10% attorney's fees were awarded pursuant to the terms of the lease. Judgment was rendered in favor of plaintiff in the sum of $616.18. Judgment was also rendered in favor of defendant in the sum of $50.00 on his reconventional demand for water damage. Defendant does not dispute that portion of the judgment pertaining to the four-day overstay and the broken toilet. Plaintiff does not contest the judgment in favor of defendant on his reconventional demand.
Defendant contends on appeal that the damage claimed by lessor occurred prior to the commencement of his lease. According to the terms of that lease, he argues, the lessee is responsible only for damage occurring during his tenancy.
The record supports defendant's contention on two items in the award, i.e., costs for removal of the air-conditioning connections and water tower totalling $15.50. The air-conditioning unit tower and piping were installed by a former tenant who leased the premises for several years beginning in 1950. Though the lease provides that any additions made by the lessee remain the property of the lessor and that the lessor "at his option, may require the building to be replaced in its original condition", the contract clearly refers only to additions made during the term of the lease and the phrase "original condition" means the condition of the premises at the commencement of defendant's lease. The airconditioning system was not installed during defendant's tenancy. Accordingly, any award in favor of the lessor must be reduced by $15.50.
The lessor, however, is entitled to the award for damages occasioned by the replacement of the toilet, the lavatory, the water heater and the cracked glass. These damages are not the result of "usual decay, wear and tear". Under the lease terms, the premises and its fixtures "are accepted by the Lessee in their present condition". The lessee did not complain of these damaged fixtures at the commencement of the lease and a presumption, therefore, is created that he received them in good order. See LSA-C.C. arts. 2719 and 2720.[1] Once the lessor has established proof of damage to the fixtures, the lessee has the burden of showing that the damages occurred prior to the commencement of his lease or that they occurred without his fault during his tenancy. Ferguson v. Smill, 183 So. 600 (La.App.Orl.1938). The lessee has failed to meet this burden. Plaintiff is entitled to recover $381.67 for the costs of replacement of the toilet, water heater and broken glass and repair of the lavatory. In addition, the lessor is entitled to recover 10% attorney's fees.
Accordingly, the judgment in favor of plaintiff is amended and recast as follows:
1. $165.00 rental
2. $381.67 cost of repairs
3. $54.67 attorney's fees
Total award in favor of plaintiff, $601.34. *241 This amount is reduced by the sum of $50.00 awarded to the lessee in reconvention. As amended, the judgment is affirmed.[2]
AMENDED AND AFFIRMED.
REDMANN, J., dissents in part.
REDMANN, Judge, dissenting in part.
C.C. 2720 does "presume" (subject to rebuttal; see Planiol, Civil Law Treatise, II, § 1705) that the lessee received the thing leased in good order. But, C.C. 2721 immediately adds, "[t]he lessee is only liable for the injuries and losses sustained through his own fault." Moreover, the general rule is that the lessor must "maintain the thing in a condition such as to serve for the use for which it is hired," C.C. 2692, and make "all the repairs which may accidentally become necessary; except those which the tenant is bound to make . . .," C.C. 2693 (whose controlling French text does not contain the word "accidentally").
The tenant is bound to make repairs specified by C.C. 2716, including "[f]or replacing window glass, when broken accidentally" (except by "hail storm or by any other inevitable accident"), but not including repairs to the plumbing.
Accordingly, although the presumption under C.C. 2720 is that the premises were in good condition at the beginning of the lease, that presumption does not by itself decide our case.
We may conclude that it is more probable than not, in the absence of evidence of the cause, that broken window glass is the result of ordinary rather than "inevitable [by force majeure]" accident, thus holding the tenant liable. But we may not conclude, in the absence of evidence, that deteriorated plumbing was caused by the lessee.
The judgment should therefore be reversed insofar as it awarded the costs of repair to lavatory and replacement of water heater.
NOTES
[1] LSA-C.C. art. 2719 reads as follows: Art. 2719. Return of things leased under inventory

"Art. 2719. If an inventory has been made of the premises in which the situation, at the time of the lease, has been stated, it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him, making, however, the necessary allowance for wear and tear and for unavoidable accidents."
LSA-C.C. art. 2720 reads as follows: Art. 2720. Return of things leased without inventory.
"Art. 2720. If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions contained in the preceding article."
[2] Because the dissent is addressed to the affirmed part of the judgment, this matter has not been referred to a five-judge panel for reargument. See Art. 5, § 8(B) of the Louisiana Constitution of 1974.