COVINGTON, Judge.
Plaintiff, John M. Daigle, filed suit seeking $2993.78 from defendants, Sharon Me-lancon and Anthony Melancon, Jr., as damages for the repair of a house leased to the defendants on Shadybrook Drive, Baton Rouge. The defendants reconvened for the return of a $1,000.00 deposit and for $10,-000.00 in damages. The trial court awarded the plaintiff $2,768.70 with legal interest and costs, and dismissed the reconventional demand. The defendants appealed. We amend in part and affirm in part.
The record reflects that on October 8, 1979, the defendants entered into a lease/purchase agreement of a new house and lot owned by Mr. Daigle. The agreement provided that the price of the house was $82,500.00 cash. In connection with the agreement, the purchasers made a cash deposit of $1,000 with the seller. Further, the agreement allowed the purchasers to occupy the house for a monthly rental of $600.00 until the sale, which was to occur by December 31, 1980.
The defendants, their two children, Mrs. Melancon’s mother, an invalid uncle and three dogs moved into the house and lived there, under the original agreement. The defendants later notified the seller that they could not afford to purchase the house, but wished to occupy it for an additional six month period, which would end June 30, 1981.
On December 1, 1980, a new, 6-month “lease agreement”, with an increased monthly rental, was signed between the parties. The defendants moved out of the house during the middle of June, 1981. After their removal, plaintiff inspected the premises and determined that extensive cleaning and repairs were needed. Plaintiff had the work done and afterwards filed the suit seeking damages for the repairs. Defendants reconvened seeking the return of the deposit which' was made in connection with the original agreement and damages. The court below awarded plaintiff the amount sought, subject to certain adjustments, and denied the defendants’ re-conventional demand.
The house was new when delivered to the defendants. The evidence clearly supports the plaintiff’s claims regarding the condition of the house when vacated by the defendants. Plaintiff’s witnesses established that the carpet needed replacing; the kitchen cabinets and formica counter-top were scratched and scarred from abusive use; the interior walls needed repainting; an exterior post, a window screen, and a portion of bifold doors needed replacing; several nails had been driven in the mortar on the face of the living room fireplace; and the house was infested with fleas. The defendants did not deny that some damage to the house had occurred, but they attempted to diminish the magnitude of the damage. The trial court found that the plaintiff had proved his claim for damages and made the award complained of.
There is a presumption that the lessee received the premises in good order. LSA-C.C. arts. 2719, 2720. This is especially true in a situation, such as in the instant case, where the leased house is new. As stated above, the lessor proved the damage to the premises. Once the lessor has established proof of damage, the lessee must then go forward with proof that the damages occurred prior to the commencement of his lease or they occurred without his fault during his tenancy. Speirer v. McIntosh, 342 So.2d 238 (La. *659 App. 4th Cir.1977); Schmidt v. Cohan, 96 So.2d 400 (La.App. 2nd Cir.1957).
The court in the instant case found that the plaintiff had proved that the house had been damaged, that the defendants’ evidence failed to absolve them of fault and that the repairs made by the plaintiff were necessary and proper. The record supports the trial court’s fixing of damages under the circumstances of this case. St. Tammany Investment Properties, Inc. v. Cairns, 425 So.2d 252 (La.App. 1st Cir.1982).
The next issue raised on appeal concerns the $1,000.00 deposit made by defendants to plaintiff when the original lease/purchase agreement was signed. Appellants contend that it was a refundable “security” deposit and therefore should be returned.
The contract of October 8, 1979, is clearly a purchase agreement, with lease provisions. The contract required that a deposit “... as part óf the cash payment, in the sum of one thousand dollars ...” be made with the seller. It also stipulated that: “This deposit shall not be considered as earnest money ... Time is of the essence in this contract. In the event of default by either party, the non-defaulting party shall have the right to demand and sue for specific performance and/or damages.”
The “Lease Agreement” dated December 1, 1980 provided “This agreement is to take the place of the original lease/purchase agreement ... if sale is not passed by December 31, 1980. If sale is not passed by December 31, 1980, the original agreement shall be deemed null and void.”
When the sale did not take place by December 31, the Melancons continued to occupy the house as tenants under the December 1 agreement. They were never placed in default by appellee, and they requested the $1,000.00 be applied to the June, 1981 rent.
The contract of October 8 specified that the deposit was not earnest money, and was to be applied to the purchase price at the act of sale. The agreement of December 1 provided for the cancellation of the October 8th agreement upon the happening of an event — i.e., failure of the purchaser to take title by December 31. Since that event occurred without either party being in default, the deposit should have been returned to the purchasers. LSA-C.C. art. 2463; Southern Pacific Transportation Company v. Port-O-Call, Inc., 314 So.2d 755 (La.App. 4th Cir.1975), writ denied 318 So.2d 45 (La.1975). Under the circumstances of this case, the $1,000.00 retained by appellee shall be credited against the judgment of $2,768.70 in his favor.
For the reasons assigned, the judgment of the trial court is affirmed in part and amended in part. The costs of this appeal shall be divided equally between appellants and appellee, and the costs in the trial court shall be paid by appellant.
AMENDED AND AFFIRMED.