ARMSTRONG, Judge.
Plaintiff, Bernard Company, Inc., (“Bernard”) is the owner and lessor of a five-story building located at 727-29 Canal Street. Defendant, Factory Outlet Shoes of New Orleans, Inc. (“Factory Outlet”) is the lessee of said building. Plaintiff filed suit against the defendant seeking actual and liquidated damages for defendant’s failure to properly maintain the building and to timely vacate the premises at the expiration of the lease. After a trial on the merits, the trial court awarded plaintiff $60,843.00 in total damages. It is from this judgment that defendant appeals. We affirm.
The record reflects that Bernard executed a lease agreement with Factory Outlet for Bernard’s building. The term of the lease was for five years, beginning on September 1, 1965. Prior to the lease agreement Factory Outlet subleased from Bernard’s tenant for a period of two years.
The lease agreement was renewed in May 1968 and extended twice, the last extension expiring on August 31, 1981. In anticipation of the lease expiration, Bernard caused the building to be inspected in July and August 1981. Extensive damage was found both to the interior and exterior of the building, as well as to the elevator and central air-conditioning unit. Alleging that the damage was caused by Factory Outlet’s failure to maintain the building, Bernard sued for $108,000.00. This amount included a liquidated damages claim based upon Factory Outlet’s failure to timely surrender the building, thus causing an eleven day delay in the new tenant’s ability to take possession. The trial court rendered judgment in favor of Bernard awarding $60,843.00 in total damages.
Appellant first claims that Bernard acquiesced in any deficiencies in appellant’s maintenance of the leased premises.
The original lease and its extensions in pertinent part reads as follows:
The said premises and appurtenances, including locks, keys, and lighting, heating and plumbing systems, and fixtures and attachments, are delivered in good order and lessee is obligated to keep all of same in like good order during the term of this lease; to keep in repair all plumbing, even when injured by freezing; to keep the chimney’s, drains and plumbing *649 clean and to deliver them at the expiration of this lease_ Lease, p. 1, par. 2, April 1963.
The parties agree that the terms of the net lease imposed a duty upon Factory Outlet to repair and maintain the building during its occupancy. Appellant argues, however, that during the eighteen years of its occupancy the building was subject to periodic inspections, including that of Bernard’s agents; that any requests for repairs by the lessor had been effected; and that, in fact, Factory Outlet expended considerable funds over the years in maintaining the building. Thus, appellant concludes, if any deficiencies in maintenance existed at the termination of the lease, Bernard acquiesced to the deficiencies by its knowledge of the defects and by renewing and extending the lease.
In support of its position appellant relies on Matthews v. Alsworth, 45 La.Ann. 465, 12 So. 518 (1983) and Copping v. Bertolino, 245 So.2d 735 (La.App. 4th Cir.1971). We find both of these cases inapplicable to the facts before us. Matthews dealt with a subsequent landlord’s attempt to obtain damages from the lessee of the previous lessors. The court found that although the former lessors to the defendant had renewed the lease prior to their sale of the property to the plaintiff, they reserved no rights at the lease renewal, nor was reference made to any violation of the lease. The former lessors, under these circumstances, were found to have acquiesced in the defendant’s acts as a lessee. The court held that rights of action for damages, violations and rent against former owners and against all tenants under prior leases are not assignable nor transferrable to the subsequent lessor without specific provisions in the terms of the lease.
In Coping the court held that the lessor’s knowledge of the lessee’s failure to install a fire extinguisher constituted acquiescence on the part of the lessor thus defeating his attempt to cancel an on-going lease.
In the instant case, Bernard does not seek to cancel a lease nor does it claim transferred rights from a prior lessor against the former lessor’s tenant. Bernard seeks damages for Factory Outlet’s failure to return the leased property in good order, excepting for ordinary wear and tear. We do not find that the lessor’s alleged knowledge of damage to his property waives the lessee’s duty to return the property in good order at the expiration of the lease. LSA-C.C. Arts. 2719 and 2720. Dietz v. Superior Oil Co., 252 So.2d 198 (La.App. 3rd Cir.1971), writ denied 259 La. 945, 253 So.2d 383 (1971).
In addition we note that the May 16,1968 lease contained the following typed rider:
This is an extension or reneweal of a lease, covering a prior period, bearing on the same premises and it is agreed and understood by the parties hereto that any default or violation by lessee in any obligation or condition of the lease, covering the prior period, shall constitute a default or violation under the within lease.
The May 16, 1968 lease was extended on May 28, 1975 and on November 15, 1976. Each extension incorporated the terms, convenants and conditions of the May 1968 lease including the above rider. Pursuant to this provision, Factory Outlet agreed that any default or violation by them of the 1963 lease continued to be a default or violation of the May 1968 lease and its extensions. Accordingly, we hold that Bernard did not acquiesce in any violation of a prior lease when it executed the 1968 lease and subsequent extensions.
Appellant also claims that the trial court erred by awarding damages to Bernard for remedial work which was not performed and which Bernard had no obligation to perform. Appellant points out that of the total award to Bernard, $45,490.00 represented compensation for damaged items which Bernard had not repaired as of the date of trial. Appellant characterizes the judgment award as “exemplary or punitive damages”. He argues that Bernard was not entitled to compensation for the maintenance deficiencies because the repairs were not required by the lease executed with the replacement tenant, nor were they neces *650 sary for the preservation of the building. We disagree.
The testimony and evidence presented at trial clearly establishes that Factory Outlet surrendered the building to the lessor in a state of disrepair. The judgment award represented the estimated cost of repairing maintenance deficiencies rather than an award of exemplary or punitive damages. Factory Outlet’s responsibility to Bernard to respond in damages for failing to maintain the property in good condition is not somehow absolved by Bernard’s subsequent lease with a new tenant. Likewise, Bernard’s failure to repair the deficiencies prior to trial does not waive Factory Outlet’s underlying duty to comply with the terms of the lease nor would it affect the ultimate assessment or award of damages. Factory Outlet was required to maintain and surrender the building in good order. We find no error on the part of the trial court in its award of damages based upon its finding that Factory Outlet failed to comply with the terms of the lease.
In addition, appellant claims that the trial court erred by failing to make any allowance for the decay of the building by reasonable wear and tear, or for the condition of the premises when received by appellant. We disagree.
Prior to the termination of the lease Bernard had the building inspected by Architect James H. Gibert and Robert Haase, a contractor and President of Haase Construction Company. Both men were charged with identifying maintenance deficiencies. Mr. Haase prepared the estimated cost of repair for each deficiency cited. Mr. Gibert testified that their inspection consisted of identifying “Obvious conditions of the building that would have been caused by lack of care during the normal occupancy of the building.” Mr. Haase likewise testified that the building showed “lack of repair for sometime.” Mr. Gibert’s itemized report of August 21, 1981, listed forty-nine separate maintenance deficiencies affecting both the interi- or and exterior of the building. Of the items listed the trial court awarded damages for the “remedial repair” of twenty six of the maintenance deficiencies.
In awarding damages the trial court in its written reasons for judgment stated:
The court recognizes that the building on Canal Street is old and has been estimated by the architect to be over 50 years of age. The remedial repairs allowed by the court herein are not predicated on the age of the building or depreciation factors. The remedial repairs are maintenances which the defendants were obligated to make under the terms of the lease and extensions, the failure of which has resulted in the defendants breach of its obligation and the resulting damages and the need for remedial work.
Thus, we cannot conclude that the trial court failed to make allowances for those deficiencies which resulted from reasonable wear and tear.
Appellant also argues that the trial court failed to take into consideration the condition of the building at the commencement of the lease. The appellant did not make an inventory nor did it except to the conditions of the building when it negotiated the original lease, thus it is presumed that appellant received it in good order. LSA-C.C. Arts. 2719 and 2720. Speirer v. McIntosh, 342 So.2d 238 (La.App. 4th Cir. 1977). Although this presumption is a rebuttable one, P.A.C.T. Barge Co. v. Bayou Const. of Houma, Inc., 357 So.2d 889 (La. App. 1st Cir.1978), writ denied 359 So.2d 628 (La.1978), we do not find that the testimony of Mr. Harry L. Zoblotsky regarding his recall of the condition of the building some eighteen years ago overcame the presumption.
Appellant next maintains that the trial court erred in awarding plaintiff damages for the costs of replacing the air-conditioning unit. While we agree with appellant that the terms of the lease place the responsibility of replacement of the air-conditioning unit on the lessor,[1] the evidence *651 presented clearly establishes that the award of damages was for the repair of the existing unit rather than for replacement costs. In its judgment the trial court stated:
The evidence will reflect that the Air Conditioner was inoperative and in a poor state of maintenance through lack of regular maintenance. Accordingly, the Court will accept the estimate of $7,100.00 to repair the Air Conditioning system, consisting of $5,100.00 to replace the compressor motor and starter, etc., and an additional $2,000.00 for additional work to remove the water cool condenser and replacement of panels, etc. The costs herein expended are to maintain the existing air conditioning unit and not the cost of installation of a new unit.
We find this assignment of error to be without merit.
Finally appellant avers that the trial court erred in awarding liquidated damages in the sum of $5,479.00 based upon appellant’s failure to vacate the premises until eleven days after the expiration of lease. We disagree.
The terms of the lease provide in part: "... Lessee is bound at the end of this lease to return, by actual delivery of the keys, without further notice, possession of said premises and appurtenances, broom cleaned and free of trash, in like good order as received, the usual decay, wear and tear only excepted.... Should lessee fail to surrender possession as herein provided, lessee consents to pay as liquidating damages five times the rent per day for every day of his failure to do so....”
Although appellant does not contest the calculation of the liquidated damages, he does object to the assessment against him. Factory Outlet claims that it delivered the keys to Bernard’s representative on August 30, 1981, but was later advised that the building was dirty and full of trash. The keys were returned and Factory Outlet then hired three men to clean the building. Factory Outlet admits that it did not finally surrender the keys until September 11, 1981.
Under these facts, we cannot say that the trial court was in error in its determination that Factory Outlet failed to vacate the premises until eleven days after the expiration of the lease.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. Bernard Co. did in fact later replace the air-conditioning unit at a cost of approximately *651 $13,000.